UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ogonnaya V. O. on behalf of M. C. O.            Case No. 21-cv-2334 (TNL)

    Plaintiff,

v.                                              **ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,[1]

    Defendant.

---

Ogonnaya V. C., 804 Sixth Street Northwest, Apartment 1, New Brighton, MN 55112 (Pro Se Plaintiff); and

Ana H. Voss, Assistant United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; and Emily Carrol and James D. Sides, Special Assistant United States Attorneys, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235 (for Defendant).

---

## I. INTRODUCTION

Pro Se Plaintiff Ogonnaya V. O. brings the present case, contesting Defendant Commissioner of Social Security's denial of an application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, on behalf of his minor child, M. C. O. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

---

[1] The Court has substituted Acting Commissioner Kilolo Kijakazi for Andrew Saul. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI asserting that his child has been disabled since birth due to sickle cell anemia.[2]  Tr. 11, 195, 205.  Plaintiff's application was denied initially and again upon reconsideration.  Tr. 11, 201, 204, 211, 214, 298.  Plaintiff appealed by requesting a hearing before an administrative law judge ("ALJ").  Tr. 11, 296.

### A. ALJ

The ALJ held a hearing in October 2022.  Tr. 11; *see generally* Tr. 175-94.  At the hearing, Plaintiff was unrepresented.[3]  Tr. 177; *see* Tr. 190.  The ALJ subsequently issued an unfavorable decision.  *See generally* Tr. 11-18.  The ALJ found that Plaintiff's child had the severe impairments of "hemoglobin SS genotype, sickle cell anemia and thrombocytopenia" but none of these impairments individually or in combination met or equaled the severity of a listed impairment or was functionally equivalent to the severity of a listed impairment.  Tr. 12-17.  The ALJ determined that Plaintiff's child was not disabled.  *See* Tr. 17-18.  After receiving an unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which denied his request for review.  Tr. 1-3.

---

[2]
> Sickle cell disease is a group of inherited red blood cell disorders that affect hemoglobin, the protein that carries oxygen through the body. Normally, red blood cells are disc-shaped and flexible enough to move easily through the blood vessels. In sickle cell disease, red blood cells become crescent- or "sickle"-shaped due to a genetic mutation.

*What Is Sickle Cell Disease?*, Nat'l Heart, Lung, & Blood Institute, Nat'l Institutes of Health, https://www nhlbi. nih.gov/health/sickle-cell-disease (last accessed Sept. 6, 2023).
[3] As evident in the hearing transcript, the Court compliments the extra care taken by the ALJ in light of Plaintiff's pro se status.

### B. Federal Court

Plaintiff subsequently filed the instant action, challenging the ALJ's decision. The Court appreciates that Plaintiff is proceeding pro se and has accorded him significant time in preparing his case and flexibility with his filings. *See, e.g.*, ECF No. 7, ECF No. 17, ECF No. 25 (extensions granted); *see also, e.g.*, ECF No. 5, ECF No. 25 at 1 n.1. In light of Plaintiff's pro se status and in the interests of justice, the Court has collectively construed Plaintiff's filings, including those filed after the deadline set by the Court.

### III. ANALYSIS

### A. Initial Comments

Before proceeding to the merits, the Court makes some initial comments. First, Plaintiff appears concerned that his child's sickle cell disease is not being taken seriously. *See, e.g.*, ECF No. 8 at 6. To that end, the Court emphasizes that there is no dispute that Plaintiff's child suffers from sickle cell disease. *See, e.g.*, Tr. 12, 414, 424, 434, 438, 441, 444, 472, 476, 498, 465, 461, 457, 516, 512, 506, 503, 541, 537, 559, 551. The ALJ found that the child has sickle cell disease and that the disease is a severe impairment. But, respectfully, the child's diagnosis alone is not sufficient. *See McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011); *see also Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014). The fact "[t]hat a claimant has medically documented impairments does not perforce result in a finding of disability." *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). Indeed, this concept is reflected in step three of the sequential evaluation process discussed below and the questions of whether a severe impairment meets,

3

medically equals, or is functionally equivalent to the applicable level of severity set forth in the regulations. *See infra* Section III.B.

Second, Plaintiff's filings reflect the genuine and understandable concerns of a parent regarding the present and future economic impact the medical care for his child has had and will continue to have on his family. *See, e.g.*, ECF No. 8 at 3-6; ECF No. 18 at 1-2; ECF No. 22 at 2; ECF No. 29 at 1. The Court appreciates and empathizes with Plaintiff's pragmatic concerns. Again, respectfully, eligibility for disability benefits turns on the nature of the severe impairment during the applicable period.

**B. Legal Standard**

This Court's "task is to determine whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quotation omitted); *accord Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Lucus*, 960 F.3d at 1068 (quotation omitted).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (quotation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978,

4

979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676; *see also Kraus*, 988 F.3d at 1024 ("This Court will disturb the ALJ's decision only if it falls outside the available zone of choice. An ALJ's decision is not outside the zone of choice simply because this Court might have reached a different conclusion had we been the initial finder of fact." (quotations and citations omitted)).

"A minor child is considered disabled and thus entitled to SSI if he or she 'has a medically determinable physical or mental impairment, which results in marked and severe functional limitations,' and which has lasted or is expected to last at least a year."

5

*Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1151 (8th Cir. 2004) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)); *accord Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 646-47 (8th Cir. 2004); *see also* 20 C.F.R. § 416.906. "The Commissioner is required to undergo a three-step sequential evaluation process when determining whether a child is entitled to SSI benefits." *Carter ex rel. E. K. W. v. Saul*, No. 4:18CV1748 HEA, 2019 WL 5696143, at *4 (E. D. Mo. Nov. 4, 2019); *see* 20 C.F.R. § 416.924(a); *see also Garrett*, 366 F.3d at 647. "First, the minor child cannot be gainfully employed." *Garrett*, 366 F.3d at 647; *see* 20 C.F.R. § 416.924(b). "If the child meets this threshold requirement and is not engaged in substantial gainful activity, the ALJ must next consider whether the child's impairment or combination of impairments is 'severe.'" *Garrett*, 366 F.3d at 647; *see* 20 C.F.R. § 416.924(c). "If so, the ALJ determines whether the child's impairments meet, medically equal, or functionally equal a listed impairment set out in Appendix 1 of 20 C.F.R. Part 404, Subpart P." *Garrett*, 366 F.3d at 647; *see* 20 C.F.R. § 416.924(d). If the child's impairments do not meet, medically equal, or functionally equal a listed impairment, the child is not disabled. *See Carter*, 2019 WL 5696143, at *4.

    **C. Issues Before the Court**

    As noted above, the Court has accorded Plaintiff a certain degree of leniency and flexibility with his filings in light of his pro se status. At the same time, "[i]n granting the deference owed to pro se parties, [the court may not] assume the role of advocate for the pro se litigant." *Machen v. Iverson*, No. 11-cv-1557 (DWF/JSM), 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012) (quotation omitted), *report and recommendation adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012); *see Bracken v. Dormire*, 247 F.3d 699, 705

(8th Cir. 2001) (Arnold, J., dissenting) ("Of course, a pro se pleading is not a magic hat out of which a court may pull any claim it thinks should have been advanced."). As best as this Court is able to tell, Plaintiff essentially asserts that the ALJ failed to develop the record as to the impact his child's sickle cell disease has on the child's functioning at school and his child's condition has changed since the ALJ's decision.

### 1. Functional Equivalence

Plaintiff asserts that the ALJ "spent no time . . . discover[ing] how [his] child's school work is affected by the disease." ECF No. 8 at 3. "[S]ocial [S]ecurity hearings are non-adversarial." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case." *Id.*; *see, e.g.*, *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017); *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). At the same time, "this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy*, 648 F.3d at 612. "An ALJ does not fail in his [or her] duty to develop the record if substantial evidence exists to allow the ALJ to make an informed decision." *Hey v. Colvin*, 136 F. Supp. 3d 1021, 1046 (D. Minn. 2015); *see Hilliard v. Saul*, 964 F.3d 759, 763 (8th Cir. 2020) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." (alteration in original) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)).

"A [claimant] seeking to reverse an ALJ's decision due to the failure to adequately develop the record bears a heavy burden: a [claimant] must show both a failure to

develop necessary evidence and unfairness or prejudice from that failure." *Hey*, 136 F. Supp. 3d at 1046; *see Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005); *see also Twyford v. Comm'r*, 929 F.3d 512, 517 n.3 (8th Cir. 2019). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008); *accord Smith v. Astrue*, 232 F. App'x 617, 619 (8th Cir. 2007) (per curiam). And, "[u]ltimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

For a child's impairment to be functionally equivalent to a listed impairment, it "must be of listing-level severity; *i.e.*, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a); *see id.* § 416.926a(d). This evaluation includes consideration of how the child functions in school. *Id.* § 416.926a(a)(2); *see id.* § 416.926a(b). A marked limitation exists when the "impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2). An extreme limitation exists when the "impairment(s) interfere very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3).

The functional domain of interacting and relating with others considers, among other things, how well the child "develop[s] and use[s] language." *Id.* § 416.926a(i); *see id.* § 416.926a(i)(1)(iii), (2)(ii), (iii). Difficulties communicating with others and speaking are examples of limited functioning in this domain. *Id.* § 416.926a(i)(3)(v),

8

(vi). Acknowledging Plaintiff's testimony that his child received assistance with speech at school, the ALJ found that the child had no limitation in interacting and relating with others. Tr. 14; *see* Tr. 15.

The record reflects that no developmental concerns for the child were reported to providers during medical visits. *See, e.g.*, Tr. 425, 435, 432, 429, 445, 477, 473, 462, 458, 537, 535, 528, 559, 557. As part of well-child visits in 2016 and 2017, assessments were made as to the child's development. The assessments revealed some initial borderline scores in the communication "zone," but no further follow-up was recommended. *See, e.g.*, Tr. 516, 506; *see also* Tr. 511. *But see* Tr. 502 ("pass" for communication in October 2017). In January 2018, the child received another borderline score in the communication zone and autism assessments were performed. Tr. 497. No further follow-up was recommended except for rescreening at future well-child visits. Tr. 797; *see* Tr. 492. In July 2018, another provider noted that the child was developing normally. Tr. 428. For the remainder of 2018 and in 2019, the child had passing scores in the communication zone. Tr. 492, 4985, 482. Another provider noted that the child's development was within normal limits in September 2019. Tr. 466. A Head Start record notes "concern" in the category of "Development" for the 2019-20 school year. Tr. 447.

In a functional report Plaintiff completed on behalf of his child, Plaintiff wrote that the child, who was roughly two and a half years old at the time, "talks but has not started forming words or sentences." Tr. 329; *see* Tr. 327. At the hearing, the ALJ asked Plaintiff whether the child was experiencing any developmental delays. Tr. 186. Plaintiff testified that the child does not "speak very much in class" and has "a special

9

aide" for speech. Tr. 187. Plaintiff additionally testified that his child was not at the same level as other children in terms of speaking. Tr. 187.

It is not clear to the Court what additional information Plaintiff thinks the ALJ should have obtained from his child's school or how that information would have shown that his child's sickle cell disease caused a marked or extreme limitation in any of the domains of functioning. Even assuming for sake of argument that the child's receipt of speech therapy in school alone could constitute a marked limitation in interacting and relating with others, an impairment must result in marked limitations in at least two domains of functioning, not just one. Nor can it be said that the ALJ's decision was outside the available zone of choice considering the medical evidence in the record before the ALJ as well as prior administrative findings from a state agency medical consultant that the child had no limitation in this functional domain. Tr. 209; *see* Tr. 17. Appreciating that Plaintiff is proceeding pro se, Plaintiff has essentially claimed that the ALJ should have obtained additional information regarding his child without explaining how such additional information would have resulted in a different decision. The Court concludes that the ALJ did not fail to develop the record.

### 2. Change in Child's Condition

Plaintiff also asserts that, since the ALJ's decision, his child has had additional complaints of pain, ECF No. 8 at 5; *see also* ECF No. 18 at 1, 18-1 at 1 (letter stating child's sickle cell disease "can lead to painful episodes"); emergency-room visits, ECF No. 8 at 5, ECF No. 22 at 2, ECF No. 27 at 1; and increased susceptibility to illness, ECF No. 18 at 1; *see also* ECF No. 18-1 at 1-2 (letter stating that child's sickle cell disease can

"lower the patient's ability to fight off germs" and "[a] fever is an emergency that requires immediate medical attention"); *see, e.g.*, ECF No. 22 at 2-3 (child hospitalized with pneumonia); ECF No. 27 at 1 (child hospitalized after falling ill).  During one of these episodes, the child's "hemoglobin counts varied from 9 to 5.6 points" and a court order was obtained to administer a blood transfusion to the child over Plaintiff's religious objection.  ECF No. 27 at 1-2; *see generally* ECF No. 28.  Most recently, Plaintiff has made arrangements for his child to undergo a bone marrow transplant.  ECF No. 29 at 1.

Plaintiff's arguments appear to touch on aspects of the criteria for Listing 107.05 for hemolytic anemias, which includes sickle cell disease. 20 C.F.R. pt. 404, subpt. P, 107.05.  To meet or equal Listing 107.05, a claimant must have a hemolytic anemia accompanied by one of the following: "[d]ocumented painful (vasso-occlusive) crises requiring parenteral (intravenous or intramuscular) narcotic medication, occurring at least six times within a 12-month period, with at least 30 days between crises"; "[c]omplications of hemolytic anemia requiring at least three hospitalizations within a12-month period," with each hospitalization "occurring at least 30 days apart" and "last[ing] at least 48 hours"; "[h]emoglobin measurements of 7.0 grams per deciliter (g/dL) or less, occurring at least three times within a 12-month period with at least 30 days between measurements"; or "[b]eta thalassemia major requiring life-long [red-blood-cell] transfusions at least once every 6 weeks to maintain life." *Id.*

The ALJ found that Plaintiff's child did not meet or equal Listing 107.05.  Tr. 13.  The ALJ noted that the child's "hemoglobin measurements [were] 9.2 to 10.0."  Tr. 13; *see* 20 C.F.R. pt. 404, subpt. P, 107.05C.  The ALJ also noted that the child did "not have

11

transfusions or the required hospitalizations." Tr. 13; *see* 20 C.F.R. pt. 404, subpt. P, 107.05B, D.  Additionally, the ALJ also relied on the prior administrative medical findings of the state agency medical consultant, who reviewed the child's record, and "opined that the [child's] condition d[id] not meet the listing criteria level of hemoglobin, need for IV/IM pain medications for pain crises, or hospitalizations related to sickle cell disease." Tr. 13 (citation omitted); *see* Tr. 210.

As the Court has stated, "[m]erely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing. 'An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify.'" *McCoy*, 648 F.3d at 611-12 (alteration in original) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). An impairment meets a listing only if it 'meet[s] all of the specified medical criteria.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) (alteration in original) (quoting *Sullivan*, 493 U.S. at 530). "An impairment is medically equivalent under the regulations if it is 'at least equal in severity and duration to the criteria of any listed impairment.'" *Carlson*, 604 F.3d at 592 (quoting 20 C.F.R. § 416.926(a)). "To establish equivalency, a claimant 'must present medical findings equal in severity to all the criteria for the one most similar listed impairment.'" *Carlson*, 604 F.3d at 594 (quoting *Sullivan*, 493 U.S. at 531). "The claimant has the burden of proving that h[er] impairment meets or equals a listing." *Id.* at 593.

Plaintiff's child was repeatedly noted to be doing well by medical providers, without complications. *See, e.g.*, Tr. 414, 415, 426, 431, 434, 442, 476, 473, 462, 457,

12

541, 536, 534, 526, 529, 558, 559, 563, 556, 549.  At the hearing, Plaintiff testified that, with the exception of some fussiness, his child was doing well on medication.  Tr. 179.

Both during the administrative process and in his filings with this Court, Plaintiff has candidly stated that he applied for disability benefits for his child out of concern for the future and progression of his child's sickle cell disease.  *See, e.g.*, Tr. 187-89, 344, 391, 410; ECF No. 8 at 4, 6; ECF No. 18 at 2.  The Court understands Plaintiff's reasoning.  But, at the risk of redundancy, the fact that Plaintiff's child has been diagnosed with sickle cell disease is not enough to make the child eligible for disability benefits.  *See McCoy*, 648 F.3d at 611-12.  The child's sickle cell disease must meet or equal the specified criteria at the time relevant to the application.  There is substantial evidence in the record as a whole to support the ALJ's conclusion that Plaintiff's child did not.

### D.  Closing Remarks

In closing, the Court echoes the words of the ALJ, who took pains to advise Plaintiff of the option to reapply should his child's condition worsen.  Tr. 189-90.  Like the ALJ, the Court "hope[s] for [Plaintiff] that his [child's] sickle cell anemia is continually monitored, and [the child] does well, and [the child] has mild symptoms."  Tr. 189.  The Court empathizes with Plaintiff's situation.  If he has not done so already, the Court encourages Plaintiff to consult with an attorney or legal aid organization about the possibility of reapplication.

## IV. ORDER

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion, ECF No. 27, is respectfully **DENIED**.

2. The Commissioner's untimely motion, ECF No. 30, is **DENIED**.[4]

3. The ALJ's decision is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 22, 2023

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Ogonnaya V. O. ex rel. M. C. O. v. Kijakazi*
Case No. 21-cv-2334 (TNL)

---

[4] The Commissioner's motion was filed on September 22, 2023. This filing comes well after the time any response to Plaintiff's motion, ECF No. 27, would have been due under former Local Rule 7.2(c), which governs as this action was filed prior to December 1, 2022. *See* ECF No. 26. The Court has not considered it.